UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

---

NEIL BASTA,

    Plaintiff,

v.

NOVANT HEALTH, INC.; NOVANT HEALTH SOUTHERN PIEDMONT REGION, LLC; THE PRESBYTERIAN HOSPITAL
d/b/a
NOVANT HEALTH HUNTERSVILLE MEDICAL CENTER,

    Defendants.

---

**AMENDED COMPLAINT**

**Civ. No. 3:19-cv-00064-RJC-DSC**

**JURY TRIAL DEMANDED**

Plaintiff, NEIL BASTA, by and through his undersigned counsel, EISENBERG & BAUM, LLP, files this Complaint against Defendants, NOVANT HEALTH SOUTHERN PIEDMONT REGION, LLC; THE PRESBYTERIAN HOSPITAL d/b/a NOVANT HEALTH HUNTERSVILLE MEDICAL CENTER, (collectively "NOVANT HEALTH" or Defendants), and alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Neil Basta (hereinafter "Plaintiff," or "Mr. Basta") is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication. Mr. Basta sought medical care for his pregnant wife, Courtney Basta, a hearing person, at Novant Health Huntersville Medial Center on June 2, 2017 after Ms. Basta began having contractions in her third trimester. Prior to June 2, 2017, Mr. Basta pre-registered with the medical center and requested that a qualified in-person

-1-

ASL interpreter be provided to him upon his and his wife's arrival at the medical center. He was assured by Defendants' staff that an ASL interpreter would be provided to him. However, from June 2, 2017 through Ms. Basta's discharge on June 4, 2017, Novant Health's medical staff failed and/or refused to provide necessary interpretation services to Mr. Basta. By ignoring or denying Plaintiff's requests for qualified, in-person ASL interpreters, Defendants failed to ensure effective communication to Plaintiff.

2. Due to physical, environmental, and pedagogical factors, many deaf individuals, including Plaintiff, have difficulty acquiring English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. For reasons similar to those described above, Plaintiff is not proficient in written or spoken English in a medical setting.

3. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of spoken sounds in aural language are visible, and many of those words appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary as English and ASL are distinct languages with disparate grammatical structures. For reasons similar to those described above, Plaintiff is not able to effectively communicate by reading lips. Despite this, Defendants often forced Plaintiff to communicate using this unreliable and ineffective method, instead of properly providing a qualified ASL interpreter.

4. Video Remote Interpreting (VRI) is a video-telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the deaf user has other conditions that impair the deaf user's ability to utilize the device (i.e., if the deaf user has a visual impairment, is in a lot of pain, or cannot achieve proper posture; when there are many people in a room; when staff is inadequately trained to set up or operate the device; or in situations that are especially complicated or emergent.) Here, Defendants utilized VRI when it was clearly not effective due to blurriness and choppiness.

5. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure Plaintiff receives effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' health care services both as a companion and as a patient himself. Plaintiff seeks injunctive relief, declaratory relief; compensatory damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), and other state and common law causes of action.

## THE PARTIES

6. Plaintiff NEIL BASTA brings this action as an individual residing at 1242 Sandy Bottom Dr. NW, Concord, North Carolina 28027. Plaintiff is a profoundly deaf individual who

communicates primarily in American Sign Language ("ASL"). Plaintiff is substantially limited in the major life activities of hearing and speaking, and is a qualified person with a disability within the meaning of the Americans with Disabilities Act, the Patient Protection and Affordable Care Act, and the Rehabilitation Act.

7. Defendant NOVANT HEALTH, INC. is a corporation that is licensed and is doing business in North Carolina with a principal place of business at 200 Hawthorne Lane, Charlotte, North Carolina 28204-2515. Upon information and belief, NOVANT HEALTH, INC. owns, leases, and/or operates Defendants Novant Health Southern Piedmont Region, LLC and Novant Health Huntersville Medical Center as their parent and grandparent company, respectively. Upon information and belief, it carries out non-discrimination policies throughout all of its partnering facilities and programs provided directly or through other entities. Thus, Defendant is subject to the requirements of Title III of the Americans with Disabilities Act, Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act.

8. NOVANT HEALTH SOUTHERN PIEDMONT REGION, LLC. is a corporation that is licensed and is doing business in North Carolina with a principal place of business at 2085 Frontis Plaza Blvd. Winston Salem, NC 27103-5614. Upon information and belief, NOVANT HEALTH SOUTHERN PIEDMONT REGION, LLC owns, leases, and/or operates Defendant Novant Health Huntersville Medical Center as the latter's parent company. Upon information and belief, it carries out non-discrimination policies throughout all of its partnering facilities and programs provided directly or through other entities. Thus, Defendant is subject to the requirements of Title III of the Americans with Disabilities Act, Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act.

9. NOVANT HEALTH HUNTERSVILLE MEDICAL CENTER is a hospital located at 10030 Gilead Road, Huntersville, North Carolina 28078. NOVANT HEALTH HUNTERSVILLE MEDICAL CENTER is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements. Defendant is subject to the requirements of Title III of the Americans with Disabilities Act, Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act.

10. Defendants maintain a section of their website titled "Interpretive Services" which states: "We believe that clear communication is one of the most important ingredients of providing outstanding care. If you or your family have special communication needs, we offer free interpreter services, which include: Foreign language interpreters for those with limited English proficiency, Sign language interpreters, Oral interpreters, TTY and other services for deaf or hard-of-hearing individuals. When you arrive at one of our Novant Health locations, if you or your family need assistance from an interpreter, let our staff know."

## JURISDICTION & VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants are residents of this District, and/or a substantial part of the events that give rise to this suit occurred in this District, and/or Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

13. Neil Basta is a profoundly deaf individual who communicates primarily through American Sign Language.

14. Neil Basta has limited proficiency in written English, and requires auxiliary aids and services to communicate effectively in a medical setting.

15. Courtney Basta is a hearing individual and is Neil Basta's wife. She was pregnant with their child at the time of the events giving rise to this suit.

16. Prior to June 2, 2017, Mr. Basta contacted Novant Health Huntersville Medical Center to request that he be provided with a qualified ASL interpreter when his wife was admitted to the hospital to deliver their child.

17. Upon information and belief, a member of Defendants' staff assured Mr. Basta that an in-person ASL interpreter would be procured once Mr. Basta contacted Defendants to inform Defendants that he and Ms. Basta were on their way to the medical facility.

18. On or about June 2, 2017, Mr. Basta contacted Defendants using Video Relay Services (VRS) . He advised a member of Defendants' staff that Ms. Basta was having contractions and that he was bringing her to Defendants' Medical Center and requested an interpreter ahead of time. Upon information and belief, the staff member directed that they must wait until he and Ms. Basta arrived at the medical center for the medical center to place a request for an interpreter.

19. Mr. and Ms. Basta arrived at Defendants' Medical Center. Upon information and belief, Mr. Basta asked members of Defendants' staff for an ASL interpreter several times both through his wife and through written notes. Staff members repeatedly replied that they "were working on it."

20. Upon information and belief, Defendants' staff provided Plaintiff with a Video

Remote Interpreter (VRI) after Mr. and Ms. Basta were brought to the room designated for delivery of their child. However, the VRI was not working because it was blurry, choppy, and did not have a clear enough picture to provide effective communication to Plaintiff.

21. Upon information and belief, a second VRI was brought into the room; however, it subsequently malfunctioned because it was blurry, choppy, and did not have a clear enough picture to enable effective communication. In addition, the outlet needed to plug in the VRI was not near Ms. Basta's bed forcing Plaintiff to leave his wife's side in order to attempt to use the VRI.

22. No other auxiliary aids or services were provided to Mr. Basta.

23. Because the VRIs malfunctioned and no qualified in-person ASL interpreter was provided, Mr. Basta was unable to understand what was happening throughout the delivery process. In addition, Mr. Basta was not given the opportunity to ask any questions concerning his wife's treatment and was thus unaware if she had any medical concerns.

24. Defendants' staff asked Mr. Basta to complete a form regarding the VRI machine.

25. At some point later, Ms. Basta gave birth. Mr. Basta had still not been provided with a qualified ASL interpreter, despite his repeated requests.

26. Throughout Ms. Basta's hospitalization from June 2 through June 4, 2017, Plaintiff made repeated requests for interpreters. Apart from the provision of two non-functional VRI machines, no interpreter services were made available to Plaintiff.

27. June 4, 2017, hospital staff gave discharge instructions to Mr. and Ms. Basta without an interpreter present.

28. On or about June 11, 2017, Plaintiff spoke with a member of Defendants' staff to complain about the lack of interpreter services during his wife's birth. To date, it is not clear

-7-
Case 3:19-cv-00064-RJC-DSC   Document 12   Filed 04/12/19   Page 7 of 17

what Defendant has done to correct the situation if anything.

29. Despite repeated technical issues with the VRI and Mr. Basta's resulting requests for an in-person ASL interpreter, Defendants' staff failed to provide an interpreter or an effective alternative auxiliary aid to Plaintiff.

30. In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter. Indeed, Mr. Basta was not able to effectively communicate with doctors, nurses or any other staff concerning his wife and newborn child's condition or treatment.

31. Without the aid of a qualified ASL interpreter, Mr. Basta was unable to understand the nature and scope of Ms. Basta's condition. He was not adequately advised of the diagnoses, prognoses, medications, or treatments for his wife and newborn child. He was unable to ask questions of medical staff for clarification.

32. Without the aid of a qualified ASL interpreter, Mr. Basta was unable to remind staff at Defendants' facility that his wife had a history of unexplained blood loss during birth – a complication that was life-threatening and had resulted in Ms. Basta being unconscious during a prior childbirth.

33. Mr. Basta was unable to ask questions about Defendants' procedures in order to ensure that his wife would not lose consciousness during birth at issue.

34. Defendants' failure to provide Mr. Basta with effective auxiliary aids and services caused Mr. Basta to experience fear, anxiety, indignity, humiliation, and/or emotional distress, especially since his wife had previously experienced life-threatening complications during childbirth

35. Defendants knew or should have known of their obligations under the Affordable

Care Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

36. Defendants and its physicians and staff knew or should have known that its actions and/or inactions created an unreasonable risk of causing Mr. Basta greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person or companion would be expected to experience.

37. Defendants' physicians and staff failed to assess the communication abilities and needs of Mr. Basta.

38. As a result of Defendants' failure to ensure effective communication with Mr. Basta, he and his wife received services that were objectively substandard and that were inferior to those provided to hearing individuals.

39. As a result of Defendants' failure to ensure effective communication with Mr. Basta, he was deprived of his right to understand his wife's medical treatment during the delivery of their child.

40. Defendants' wrongful and intentional discrimination against Mr. Basta on the basis of disability is reflected by the Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

41. Defendants discriminated against Plaintiff with deliberate indifference to his communication needs, causing him to endure humiliation, fear, anxiety, and emotional distress.

42. Plaintiff wishes to seek care in Defendants' facilities again, but has been deterred by the discrimination he has faced and expects to face in the future.

## CLAIM 1: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

43. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

44. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to Defendants' conduct.

45. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendants' conduct.

46. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2). Defendant owns, leases, and/or operates places of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

47. Defendants owns, leases, and/or operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

48. Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

49. Title III of the ADA further provides that "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

50. Federal regulations implementing Title III of the ADA provide that a public "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

51. Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 28 C.F.R. § 36.303(a).

52. Defendants discriminated against Plaintiff, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

53. As set forth above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional deaf patients or companions.

54. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

55. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

56. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

57. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendants' conduct.

58. At all times relevant to this action, Mr. Basta had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

59. At all times relevant to this action, Defendants has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

60. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

61. The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

62. Defendants discriminated against Plaintiff, solely on the basis of disability, by denying him meaningful access to the services, programs, and benefits the Defendants offered to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

63. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur again with Plaintiff and other Deaf patients and family members.

64. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

65. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

**CLAIM 3: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT**

66. Plaintiff repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length

herein.

67. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect and applied to the Defendants' conduct.

68. At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

69. At all times relevant to this action, Plaintiff had substantial limitations to the major life activity of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

70. At all times relevant to this action, Plaintiff's primary language for communication was American Sign Language and not English; and Plaintiff had limited ability to read, write, speak, or understand English, and were individuals with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

71. At all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendants is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

72. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

73. Defendants discriminated against Plaintiff solely on the basis of his disability and his limited English proficiency by denying him meaningful access to the services, programs, and

benefits the Defendants offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

74. Defendants discriminated against Plaintiff by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through VRI machines that functioned properly.

75. On information and belief, the refusal to offer on-site ASL interpreter services is as a result of a policy or practice of Defendants to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

76. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur again with Plaintiff and other deaf patients and family members.

77. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

78. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

# PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against Defendants:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiffs to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act;

B. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

C. Order Defendants:

   i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

   ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

   iii. To develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters,

videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

vi. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

vii. to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Rehabilitation Act, and the ACA;

viii. to train all employees, staff, and other agents on a regular basis about Defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably

requested by deaf or hard of hearing patients;

D. Award to Plaintiff:

　i. Compensatory damages pursuant to Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act;

　ii. Reasonable costs and attorneys' fees pursuant to the ADA, Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act;

　iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

　iv. Any and all other relief that this Court finds necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: April 12, 2019

　　　　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　EISENBERG & BAUM, LLP
　　　　　　　　　　　　　　　　　　24 Union Square East, Fourth Floor
　　　　　　　　　　　　　　　　　　New York, NY 10003
　　　　　　　　　　　　　　　　　　212-353-8700 (tel.)
　　　　　　　　　　　　　　　　　　212-353-1708 (fax)

　　　　　　　　　　　　　　　　　　By:

　　　　　　　　　　　　　　　　　　/s/ Andrew Rozynski
　　　　　　　　　　　　　　　　　　Andrew Rozynski, Esq. (NY # 5054465)
　　　　　　　　　　　　　　　　　　arozynski@eandblaw.com