| | |
|---|---|
| **NEIL BASTA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION AND ORDER** |
| ) | |
| **NOVANT HEALTH INC., NOVANT** ) | |
| **HEALTH SOUTHERN PIEDMONT** ) | |
| **REGION LLC, THE PRESBYTERIAN** ) | |
| **HOSPITAL D/B/A NOVANT HEALTH** ) | |
| **HUNTERSVILLE MEDICAL CENTER,** ) | |
| ) | |
| **Defendants.** ) | |

**THIS MATTER** is before the Court on "Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)," Doc. 14, and the parties' associated briefs, Docs. 15-17.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted</u> as discussed below.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

Taking the facts of the Amended Complaint as true, Plaintiff Neil Basta is a deaf individual who communicates primarily in American Sign Language ("ASL").  His wife Courtney Basta is a hearing individual who was pregnant at the time of these events. Defendant Novant Health

maintains a written policy for accommodating individuals with hearing impairments. The policy, which is available to the public on-line, provides:

> We [Novant Health] believe that clear communication is one of the most important ingredients of providing outstanding care. If you or your family have special communication needs, we offer free interpreter services, which include: Foreign Language interpreters, Oral interpreters, TTY and other services for deaf or hard of hearing individuals. When you arrive at one of our Novant Health locations, if you or your family need assistance from an interpreter, let our staff know.

Doc. 12 at ¶ 10.

Prior to June 2, 2017, Plaintiff pre-registered with Defendant's Huntersville Medical Center and requested that a qualified in-person ASL interpreter be provided to him upon his and his wife's arrival at the medical center. A member of Defendants' staff assured Plaintiff that an ASL interpreter would be provided once he notified Defendants that he and his wife were en route to the Medical Center.

On June 2, 2017, Plaintiff contacted Defendants using Video Relay Services (VRS) and advised that his wife was having contractions and they were en route to the Medical Center. He requested an interpreter and a staff member advised that a request would be placed once they arrived. Once at the Medical Center, Plaintiff asked Defendants' staff several times for an interpreter and was told they were working on it. Plaintiff was provided with a Video Remote Interpreter (VRI) after he and his wife were brought to the delivery room. The VRI was not working properly. It was blurry, choppy and did not have a clear enough picture to provide effective communication for Plaintiff. A second VRI was brought into the room but it also malfunctioned.

Since the VRIs malfunctioned and no interpreter was provided, Plaintiff was not given the opportunity to ask questions about his wife's treatment and was unaware if she had any medical concerns. Throughout his wife's hospitalization, Plaintiff made repeated requests for an

interpreter, but apart from the two VRI machines nothing was made available. On June 4, 2017, staff gave discharge instructions without an interpreter present. Plaintiff states that he "wishes to seek care in Defendants' facilities again, but has been deterred by the discrimination he has faced and expects to face in the future." Doc. 12 at p. 9.

Plaintiff filed his original Complaint in this Court on February 7, 2019. He filed an Amended Complaint on April 12, 2019. He alleges violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 ("ACA"). Plaintiff seeks prospective injunctive relief under the ADA and monetary damages under the RA and the ACA.

Defendants filed the instant Motion to Dismiss on May 8, 2019 seeking dismissal of all three counts of Plaintiff's Amended Complaint. They argue that Plaintiff fails to allege imminent harm to support a claim for injunctive relief under the ADA, that he fails to sufficiently plead intentional discrimination as required to state a claim under the RA, and that he fails to allege that he himself was seeking medical treatment as required to support a cause of action under the ACA.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a case shall be dismissed in the absence of subject matter jurisdiction and "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). The existence of subject matter jurisdiction is a threshold issue for the court before it reaches the merits of a case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). Whether a plaintiff has standing to bring a cause of action "is generally associated with Civil Procedure Rule

12(b)(1) pertaining to subject matter jurisdiction." CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011). "That is because 'Article III gives federal courts jurisdiction only over cases and controversies,' and standing is 'an integral component of the case or controversy requirement.'" Id. (quoting Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006)).

**B.  Federal Rule of Civil Procedure 12(b)(6)**

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard.  First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true); see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are

constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

# III. DISCUSSION

## A. Americans with Disabilities Act Claim

Title III of the ADA applies to privately operated public accommodations including hospitals and prohibits discrimination "on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(a). Although Title III does not allow a private party to seek monetary damages, it does provide for injunctive relief. 42 U.S.C. § 12188.

In order to demonstrate standing, a plaintiff must show (1) he has suffered an "injury in fact," (2) a causal connection between the injury complained of and the challenged action, and (3) that the injury can be redressed by a favorable decision. See Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc., 528 U.S. 167, 704 (2000) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). An "injury in fact" must be concrete and particularized and actual or imminent, rather than conjectural or hypothetical. Lujan, 504 U.S. at 560. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). The Supreme Court has reiterated that claims of possible future injury are insufficient to confer standing. Id. (citations omitted).

In order to demonstrate standing for prospective injunctive relief under the ADA, a plaintiff must establish "a real or immediate threat" that he will suffer an injury in the future. Griffin v. Dep't of Labor Fed. Credit Union, 912 F.3d 649, 653 (4th Cir. 2019). At a minimum, an ADA plaintiff must allege that he intends to return to the facility where the alleged injury occurred. Harty v. Biggs Park, Inc., No. 7:11-CV-22-F, 2014 WL 4243823, at *2 (E.D.N.C. Aug. 24, 2014).

When the plaintiff fails to establish jurisdictional standing, dismissal of the complaint is required under Rule 12(b)(1). Griffin at 657.

Plaintiff's Amended Complaint fails to allege any intent to return to Novant Health medical facilities in the future. Rather, he makes clear that he has no intention to return. Plaintiff alleges that he "wishes to seek care in Defendants' facilities again but has been deterred by the discrimination he has faced and expects to face in the future." Doc. 12 at ¶ 42. Plaintiff acknowledges that Defendants maintain a policy providing for the accommodation of hearing impaired individuals. Id. at ¶ 10. He further acknowledges that the Huntersville Medical Center in fact provided him with several accommodations, albeit not the one he requested. Id. at ¶ 20, 21.

Plaintiff argues that he is not required to plead imminent future harm because of the deterrent effect test. Plaintiff relies on authority from the First, Second, and Ninth Circuits that a Title III plaintiff need not engage in a "futile gesture" by asserting an intention to return to the Title III covered facility "if such person has actual notice that a person or organization covered by this subsection does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1).

The Court disagrees. Plaintiff cannot bring conclusory allegations of deterrent effect without demonstrating a clear intent to return to Novant Health. Additionally, Plaintiff's Amended Complaint establishes that Novant Health affirmatively intends to comply with the ADA.

Courts in the Fourth Circuit, and specifically this Court, require that a plaintiff evidence a specific intent to return to a facility in order to establish standing for injunctive relief. See Norkunas v. Park Rd. Shopping Ctr., 777 F. Supp. 2d 998, 1004 (W.D.N.C. 2011); see also, Powell v. Wheaton WIC Ctr., No. PWG-18-535, 2019 U.S. Dist. LEXIS 21461, at *6 (D. Md. Feb. 11, 2019); Nat'l All. for Accessibility, Inc. v. Millbank Hotel Partners, Civil Action No. RDB 12-3223, 2013 U.S. Dist. LEXIS 23465, at *10 (D. Md. Feb. 20, 2013); Nat'l All. for Accessibility, Inc. v.

Tunnel Rd. (E & A) Ltd. Liab. Co., No. 1:10cv282, 2011 U.S. Dist. LEXIS 50637, at *8 (W.D.N.C. Apr. 8, 2011) ("Intent to return to the place of injury 'some day' is insufficient."); Harty v. Biggs Park, Inc., No. 7:11-cv-22-F, 2014 U.S. Dist. LEXIS 118825, at *3 (W.D.N.C. Aug. 26, 2014) (same). In Norkunas, the court acknowledged the existence of the deterrent effect doctrine but went on to explain that even in the face of deterrent effects, a plaintiff must plead an imminent intent to return to the location of the past injury to establish Title III standing. Id. at 1004. Failure to do so, according to Norkunas, "would permit any disabled plaintiff to simply include conclusory boilerplate language in a Title III complaint, such as "futile gesture" and "deterrent effect," in order to establish standing to sue." Id.

Plaintiff's Amended Complaint contains a single conclusory statement that he "wishes to seek care in Defendants' facilities again, but has been deterred by the discrimination he has faced and expects to face in the future." Doc. 1 at ¶ 42. The Norkunas court found similar language insufficient to state a cause of action. Id. at 1003 ("Plaintiff's naked and self-serving assertion, that he would like to return to Defendant's place of public accommodation but for the futility of such an attempt . . . is insufficient"). The consistent holdings from courts in this district adhere to the Fourth Circuit's requirement that a plaintiff must establish "a real and immediate threat that he will be wronged again" to plead injunctive relief. Daniels v. Arcade, L.P., 477 F. App'x. 125, 129 (4th Cir. 2012).

Furthermore, the deterrent effect test only benefits Plaintiff to the extent that he can establish "actual notice" that Defendants do "not intend to comply" with Title III. Kreisler v. Second Ave Diner Corp., 731 F.3d 184, 188 (2nd Cir. 2013). Plaintiff's Amended Complaint, on its face, establishes presumptively that Novant Health fully intends to comply with Title III. Plaintiff explicitly cites Novant Health's commitment to accommodating hearing-impaired

individuals embodied in its accommodations policy and published on its website. Doc. 1 at ¶ 10. This established policy does not support Plaintiff's argument that Novant Health "does not intend to comply" with its obligations under Title III. Rather, it demonstrates that Novant Health continues to provide a variety of meaningful accommodations for hearing-impaired individuals. Plaintiff's decision not to return to Novant Health, based solely upon his allegation that he encountered malfunctioning VRI devices during a single visit, is fatal to his claim for injunctive relief.

Plaintiff's Amended Complaint fails to adequately allege his concrete, specific plans to return to the Novant Health facility and that he is likely to suffer the same injuries upon his return. As a consequence, he cannot state a claim under Title III because he failed to plead a "real and immediate" future threat which warrants injunctive relief. Therefore, the undersigned respectfully recommends that Plaintiff's ADA claim be dismissed.

### B. Rehabilitation Act Claim

In addition to injunctive relief, Plaintiff seeks monetary damages as provided for by Section 504 of the RA. Under the RA's supporting regulations, public entities must ensure effective communications with disabled individuals, and this obligation extends to family member "companions" of those receiving treatment. 28 C.F.R. §§ 35.160(a)(1)-(2). To recover compensatory damages under Section 504, a party must demonstrate that the provider "intentionally discriminated" against him. Pandazides v. Va. Bd. of Educ., 13 F.3d 823, 830 & n.9 (4th Cir. 1994).

While the Fourth Circuit has not established a standard for intentional discrimination, this Court has defined the standard as "deliberate indifference." Godbey v. Iredell Memorial Hospital, No. 5:12-cv-4-RLV-DSC, 2013 WL 4494708 at *21 (W.D.N.C. Aug. 19, 2013), aff'd 578 F.

App'x 317, 318 (4th Cir. 2014); see also Liese v. Indian River Cty. Hosp. Dist., 701 F.3d 334, 344 (11th Cir. 2012) (explaining that deliberate indifference occurs when "the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood"). Failure to accede to a demand for live in-person ASL interpreters is not, by itself, sufficient to maintain a claim of intentional discrimination or deliberate indifference. Godbey, 2013 WL at *7. Nor may a plaintiff succeed on a claim of deliberate indifference when the defendant makes reasonable efforts to provide accommodations. Id. Importantly, an entity such as Novant Health cannot be liable for intentional discrimination when, through no fault of its own, one of its electronic devices malfunctions. Durand v. Fairview Health Servs., 902 F.3d 836, 843 (8th Cir. 2018) (simple technological complications do not give rise to intentional discrimination under the Rehabilitation Act).

Plaintiff argues that while hospitals are permitted to use VRI services to deliver qualified interpreters, such services must provide effective communication and meet certain minimum standards such as "deliver[ing] high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication." 28 C.F.R. § 36.303(f)(1); § 36.303(f)(1)-(4); 28 C.F.R. § 36.104; see 28 C.F.R. § 36.303(b)(1). A VRI system that does not meet all of these standards is not an "effective method [] of making aurally delivered materials available to individuals with hearing impairments," meaning a non-compliant VRI system does not count as an auxiliary aid or service. 42 U.S.C. § 12103(1)(A); 28 C.F.R. § 36.104; 28 C.F.R. Pt. 36 App. A.  Plaintiff cites to Sunderland v. Bethesda Hosp., Inc., 686 F. App'x 807, 815 (11th Cir. 2017) and Van Vorst et al. v. Lutheran Healthcare, 15-cv-01667 (LDH)(PK) (E.D.N.Y. Sept. 26, 2018) (unpublished and unreported case-see Doc. 17, Ex. 1).  In Sunderland, the Eleventh Circuit concluded that a jury could find that defendant hospital acted with deliberate indifference when

the hospital relied on a malfunctioning VRI to communicate with the patient despite plaintiffs' complaints and requests for interpreters. Id. Both of these cases involved multiple plaintiffs and ongoing and established problems with VRI devices in the hospitals. These cases stand for the proposition that a hospital's foreknowledge of pervasive and systemic problems with VRI devices may lead to a finding of deliberate indifference. Technical issues with a VRI on a single day do not support a claim for deliberate indifference. Durand v. Fairview Health Servs., 902 F.3d 836, 843 (8th Cir. 2018).

Plaintiff's conclusory allegation that "Defendants discriminated against Plaintiff with deliberate indifference to his communication needs" fails as a matter of law to state a claim upon which relief may be granted. Plaintiff's Complaint admits that Novant Health has a policy to accommodate persons with hearing impairments, that he requested and received an accommodation in the form of a VRI, and that he was given a second VRI after he complained about the first one. The Complaint also acknowledges that Plaintiff was able to communicate with hospital staff through various means, including written notes, Video Relay Services, and lip-reading. Plaintiff's pleaded facts, viewed in the light most favorable to him, do not state a cognizable claim that Novant Health intentionally discriminated against him. Therefore, Plaintiff cannot support a claim for damages under Section 504 and the undersigned respectfully recommends that this claim be dismissed.

### C. **Affordable Care Act Claim**

Plaintiff's third cause of action seeks damages under Section 1557 of the Affordable Care Act. Section 1557 of the ACA entitled "Nondiscrimination," provides that "an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age

Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any *health program or activity*." 42 U.S.C. § 18116 (emphasis added). The ACA's regulations state that Section 1557 "prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain *health programs and activities*." 45 C.F.R. § 92.1. (emphasis added). While courts are divided on whether the ACA provides a private right of action, one court in this Circuit has held that individuals who are denied participation in health programs or activities can bring claims under Section 1557. Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 848 (D.S.C. 2015).

Defendants argue that the ACA is a patient protection statute and does not apply to Plaintiff since he was not engaged in a "health program or activity." Plaintiff argues that the RA's protections extend to him as a companion under the RA and the regulations implementing the ACA directly reference and incorporate the RA's regulations, thereby extending the RA's protections to companions. 45 CFR § 92.202 ("A covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 CFR 35.160 through 35.164."). Because the Court has found that Defendants were not deliberately indifferent under the RA, it is not necessary to determine the applicability of the ACA and the undersigned respectfully recommends that this claim be dismissed.

## IV. ORDER

IT IS HEREBY ORDERED that all further proceedings in this action, including all discovery, are STAYED pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)," Doc. 14, be **GRANTED**.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED.**

Signed: July 23, 2019

David S. Cayer
United States Magistrate Judge